UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | 1:11-CR-75 |
| v. | ) | |
| | ) | Collier/Lee |
| MARCUS MURPHY | ) | |

## **M E M O R A N D U M**

Defendant Marcus Murphy is charged with one count of felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Defendant moved to suppress a .22 caliber revolver and ammunition found in his apartment (Court File No. 11). This motion was referred to United States Magistrate Judge Susan K. Lee, who held a hearing and subsequently filed a report & recommendation ("R&R") recommending Defendant's motion be denied (Court File No. 20). Defendant then filed an objection to the R&R (Court File No. 24), and the government responded (Court File No. 25). For the reasons discussed below, the Court will **ACCEPT** and **ADOPT** the R&R (Court File No. 20). Accordingly, Defendant's motion to suppress will be **DENIED** (Court File No. 11).

### I.   RELEVANT FACTS

While the parties do not dispute the basic outline of the facts, they disagree about the proper interpretation of a key fact: whether Defendant's actions are properly construed as consenting to a search of his apartment. In recounting the facts here, the Court describes where the versions offered by the major participants diverge, and also notes the credibility determinations made by the Magistrate Judge. Although the Court conducts *de novo* review of Defendant's objections to the R&R, the Court also defers to the factfinding done by the Magistrate Judge. *Moss v. Hofbauer*, 286

F.3d 851, 868 (6th Cir. 2002).

On August 13, 2011, Deputy Anthony Gamble ("Deputy Gamble" or "Gamble") of the Marion County Sheriff's Department contacted Officer Wayne Jordan ("Officer Jordan" or "Jordan") of the Jasper County Police Department, and asked Officer Jordan to investigate Defendant's involvement in a recent home burglary. Deputy Gamble believed Defendant had purchased various items stolen by Jeff Poe ("Poe"). After receiving a call from Gamble, Officer Jordan decided to drive to Defendant's residence, which is a small, one-room efficiency apartment. Jordan knew Defendant from previous encounters.

As Officer Jordan, who was in uniform and driving a marked patrol car, was pulling up to Defendant's residence, he observed Defendant standing outside his apartment. Defendant claims he was outside working on his car when Officer Jordan arrived. Jordan contacted Deputy Gamble to inform him Defendant was at his residence. Officer Jordan parked his patrol vehicle and approached Defendant. Upon approaching Defendant, Jordan could see through the open door of Defendant's apartment, and could see on Defendant's bed items matching the description of the items stolen by Poe. Jordan informed Defendant he was searching for stolen items, and told Defendant his cooperation would be beneficial. Jordan also indicated he was not seeking to arrest Defendant, but only to recover the stolen items. Defendant admitted purchasing the items from Poe, but told Officer Jordan he did not know the items had been stolen. Defendant then told Officer Jordan the stolen items were inside Defendant's apartment.

There is disagreement about what precisely happened next. Officer Jordan first testified he followed Defendant through Defendant's open door, and that Defendant opened the door more widely to permit Jordan to enter. Officer Jordan later amended his testimony and claimed he first

2

sought and received Defendant's consent before entering the apartment. According to Officer Jordan, Defendant emphasized that because he was a convicted felon, he did not want to have stolen property in his apartment, and was thus willing to cooperate with authorities. Defendant, on the other hand, claims Officer Jordan simply followed him into the apartment without asking permission. Defendant concedes he did not protest or ask Officer Jordan to leave.[1] Because Defendant did not specifically challenge Officer Jordan's entry in his motion to suppress,[2] the Magistrate Judge made no specific finding on whose version of events on this point was more credible.

Once inside the apartment, Defendant indicated the items on the bed were among those he had purchased from Poe. At around this time, Deputy Gamble arrived at Defendant's residence. Upon arrival, Gamble could see through the open door of the apartment Defendant and Officer Jordan standing inside. Deputy Gamble walked through the open door and joined the two other men. Gamble did not ask Defendant for permission to enter the apartment. Deputy Gamble explained to Defendant that both officers were attempting to recover property stolen by Poe, and noted, as Officer Jordan had, his cooperation would be beneficial. Defendant again emphasized to

---

[1] The R&R noted "Officer Jordan consistently and unequivocally testified Defendant never gave any indication he wanted Officer Jordan to stay outside while Defendant went into his apartment to retrieve the stolen items, never asked Officer Jordan to leave, and never asked for a warrant" (Court File No. 20, p. 2). Although Defendant testified he "didn't tell [Jordan] he could come in," he admits he did not ask Jordan to stay outside the apartment (Court File No. 22, Transcript, p. 73). Thus, Defendant's testimony does not contradict Officer Jordan's testimony on this point.

[2] Defendant's motion to suppress states "[o]nce inside, officers began searching Mr. Murphy's home without permission," (Court File No. 11, p. 1.), and makes no argument Officer Jordan entered without consent or permission. As discussed below, Defendant appears to raise this argument as an objection to the Magistrate Judge's R&R.

3

both officers he was a convicted felon and therefore wanted to be as cooperative as possible. Officer Jordan testified Defendant expressed his interest in cooperation in response to a request by the officers to search the apartment for the stolen items. Defendant did not recall a request for consent, but admitted he indicated his willingness to cooperate. The officers and Defendant were able to quickly gather up a number of the stolen items and add them to those items already on Defendant's bed.

After checking the items on Defendant's bed against a list of the stolen items, Deputy Gamble questioned Defendant about a nine-millimeter semi-automatic Hi-Point handgun ("handgun"). Poe had told Deputy Gamble he had sold the handgun to Defendant along with the other stolen items. In response to Gamble's question, Defendant said he knew nothing about it. Deputy Gamble and Officer Jordan again informed Defendant they were not seeking to arrest Defendant, but only to recover the items Poe had stolen and sold to Defendant. Defendant repeated he had no knowledge of the handgun the officers were looking to recover.

At this point, the testimonies of the officers and Defendant diverge again. According to Deputy Gamble, Gamble asked Defendant for consent to search his apartment for the handgun, and Defendant said he did not have the handgun, but the officers could look for it.[3] Defendant, however, claims he specifically denied Deputy Gamble's request for consent. According to Defendant, Deputy Gamble then replied the officers could search anyway because Defendant was in possession of stolen property. Deputy Gamble denies saying this, and Officer Gamble testified he did not hear

---

[3] Officer Jordan testified he did not recall whether Gamble specifically sought consent to search for the firearm. He indicated they certainly had sought, and received, consent to search for all the stolen items, which implicitly included consent to search for the handgun (Court File No. 22, transcript, p. 24).

Gamble make a statement to this effect to Defendant. In considering this conflicting testimony, the Magistrate found 1) "the officers' testimony to be far more consistent and credible than Defendant's self-serving statement that he specifically told the officers he refused to give consent;" 2) "the officers' version of events to be far more credible than Defendant's version"; and 3) "Defendant did not refuse to give consent to a search for the stolen handgun" (Court File No. 20, p. 11).

The officers then began to search for the handgun. At this point, Defendant used his cell phone to call his father. Defendant apparently did so because he was "spooked" by the presence of the officers (Court File No. 22, Transcript, p. 72). As the officers were conducting their search, Defendant spoke briefly with his father before handing the phone to Officer Jordan. The record does not indicate what type of conversation transpired between Jordan and Defendant's father.

Shortly after beginning the search, Deputy Gamble put his hand on the top ledge of a chifforobe.[3] He could not see the top ledge from where he was standing. Feeling around with his hand, Gamble discovered a magazine for the semi-automatic handgun.[4] After Deputy Gamble had found the magazine, Officer Jordan entered the apartment's bathroom and found a loaded .22 caliber revolver ("revolver") as well as thirty rounds of ammunition. Instead of informing Defendant he had found the revolver, however, Officer Jordan signaled to Gamble to come outside the apartment, and he there informed both Gamble and additional officers who had arrived on the scene at that time about the discovery of the revolver.

---

[3] According to the Merriam-Webster online dictionary, a chifforobe is "a combination of wardrobe and chest of drawers." Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/chifforobe (last visited on March 26, 2012).

[4] The magazine fit the stolen handgun, but did not fit with the .22 revolver subsequently found by the police.

Because the officers had not recovered the handgun, the search continued. Based on information Gamble received from Poe, the officers briefly searched the apartment of Defendant's neighbor, before returning to question Defendant again. Officer Jordan sought and received consent to search Defendant's car, but did not find anything.[5] At this point, Jordan also revealed to Defendant he had found the revolver in Defendant's bathroom. Defendant claimed to be holding the revolver for a friend. Following Defendant's arrest on an outstanding warrant,[6] Defendant gave a statement that Poe had shown him the stolen handgun outside Defendant's apartment, but that he was unaware of the handgun's current whereabouts.

After being charged with one count of felon in possession of a firearm, Defendant moved to suppress evidence of the revolver on the theory the officers' warrantless search of his apartment violated the Fourth Amendment.

Before discussing the applicable law, the Court pauses to add additional, undisputed factual information about Defendant that is relevant to his suppression motion. At the time of the search, Defendant was thirty-one years old, did not suffer from any mental or cognitive impairments, and was esteemed by Officer Jordan, who knew Defendant from previous encounters, to be of average intelligence. Defendant had earned both a high school diploma and a welding degree from a technical college. He had been arrested a number of times, and had been represented by counsel for at least five convictions, both felonies and misdemeanors. Defendant also had prior experience with

---

[5] Defendant does not dispute he gave Officer Jordan consent to search his car.

[6] Officer Jordan testified he was not aware of the outstanding warrant when he first went to Defendant's residence, but later learned of it when communicating with the police department. Thus, Defendant was arrested at that time on this outstanding warrant and not for any specific conduct related to this case.

the execution of a search warrant at his residence, where the search resulted in a felony conviction. At the time of the search and arrest in this case, Defendant was on parole.

**II.     STANDARD OF REVIEW**

This Court must conduct a *de novo* review of those portions of the R&R to which objection is made, 28 U.S.C. § 636(b)(1)(C). But *de novo* review does not require the district court rehear witnesses whose testimony has been evaluated by the Magistrate Judge. *See United States v. Raddatz*, 447 U.S. 667, 675-76 (1980). The Magistrate Judge, as the factfinder, had the opportunity to observe and hear the witnesses and assess their demeanor, putting him in the best position to determine credibility. *Moss*, 286 F.3d at 868; *United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999). The Magistrate Judge's assessment of witnesses' testimony is therefore entitled to deference. *United States v. Carmack*, 426 F. App'x 378, 380 (6th Cir. 2011).

**III.    DISCUSSION**

Relying on his version of the facts, Defendant offers two objections to the R&R. First, Defendant contends he never consented to a search of his apartment, and thus objects to "any finding that [Defendant] said he wanted to get the stolen property out of his residence because he was on probation[7] as meaning officers could search his home" (Court File No. 24, p.1). Second, Defendant argues even if the Court construes Defendant's behavior as having consented to a search of his apartment, the officers exceeded the permissible scope of that consent. The Court first discusses the

---

[7] The Court notes an inconsistency between Defendant's claim he was on probation and the R&R's finding Defendant was on parole at the time of incident. Because this inconsistency has no bearing on the Court's decision on Defendant's motion, the Court does not seek to resolve it.

consent and scope of consent standards, and then conducts a *de novo* review of Defendant's objections.

**A.    Consent to Search**

The Fourth Amendment of the United States Constitution guards against unreasonable searches and seizures. U.S. Const. amend. IV. Perhaps the primary locus protected by the Fourth Amendment is an individual's home. *See Minnesota v. Carter*, 525 U.S. 83, 94 (1998) (Scalia, J., concurring) (noting "a man's home is his castle") (emphasis omitted); *United States v. Nelson*, 459 F.2d 884, 885 (6th Cir. 1972) (same). Thus, a search conducted in a home without a warrant is presumptively unreasonable. *Michigan v. Fisher*, 130 S. Ct 546, 548 (2009). This presumption, however, can be overcome in limited circumstances when an exception to the warrant requirement applies. One of those circumstances is where an individual consents to a search of his home. *United States v. Carter*, 378 F.3d 584, 587 (6th Cir. 2004) (en banc) ("It is well-settled that a person may waive his Fourth Amendment rights by consenting to a search.") (citations omitted).

While an individual can consent in a number of ways, *id.* ("Consent to a search 'may be in the form of words, gesture, or conduct.'") (quoting *United States v. Griffin*, 530 F.2d 739, 742 (7th Cir.1976), that consent must be given "freely and voluntarily," *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968). "Whether consent was free and voluntary so as to waive the warrant requirement of the Fourth Amendment is 'a question of fact to be determined from the totality of all the circumstances.'" *Carter*, 378 F.3d at 587 (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973)). The government must show, by a preponderance of the evidence, an individual validly consented, *United States v. Hinojosa*, 606 F.3d 875, 881 (6th Cir. 2010), which requires a showing that an individual's consent was "unequivocal, specific, and intelligently given, uncontaminated by

8

any duress or coercion," *United States v. Moon*, 513 F.3d 527, 537 (6th Cir. 2008) (quoting *United States v. McCaleb*, 552 F.2d 717, 721 (6th Cir.1977)).

Even if an individual is found to have validly consented, he can still challenge a search on the basis that it exceeded the scope of his consent. *See United States v. Canipe*, 569 F.3d 597, 604 (6th Cir. 2009). As with most Fourth Amendment analysis, the reasonableness touchstone guides the scope of consent analysis. *Florida v. Jimeno*, 500 U.S. 248, 250-51 (1991). Specifically, a court reviewing whether officers stayed within the bounds of an objectively reasonable search should ask "what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Id.* at 251. Thus, just as the Supreme Court in *Jimeno* considered "whether it is reasonable for an officer to consider a suspect's general consent to a search of his car to include consent to examine a paper bag lying on the floor of the car," *id.*, the Court here must determine whether it is reasonable for Officer Jordan and Deputy Gamble to consider Defendant's general consent[8] to search his apartment for the stolen items–and specifically the stolen handgun–to include consent to search inside a bag in his bathroom.

B. **Whether Defendant Consented**

Defendant first objects he did not consent to the entry of Officer Jordan or Deputy Gamble into his apartment,[9] or the ensuing search. Although Defendant does not articulate this objection

---

[8] By formulating the inquiry in this way, the Court does not begin from the assumption Defendant has consented to a search. Rather, the Court notes the scope of consent inquiry only applies where it has already made a preliminary finding an individual has consented. Because the Court, as discussed in III.B, does in fact conclude Defendant consented to a search, it also reaches the scope of consent question.

[9] There is arguably a threshold question regarding whether Defendant's objection on the basis he did not consent to the officers's entry into his apartment has been waived. As noted, Defendant did not specifically raise that issue in his underlying motion to suppress, and appears only

9

with precision, the Court interprets Defendant's objection as consisting of two parts: Defendant did not consent to an entry of his apartment by the police, and also did not consent to the subsequent search. The Court addresses each part of this objection in turn.

The Sixth Circuit's en banc decision in *Carter* informs the Court's resolution of the first part of this objection. Although neither party nor the Magistrate Judge discussed it, the *Carter* case directly addresses the issue of consent to enter.[10] In *Carter*, police officers, who were clearly marked as such, knocked on the door of a motel room where Carter was staying.[11] *Carter*, 378 F.3d at 587. When Carter opened the door, the police sought entry, and Carter did not speak or say anything, but instead "stepped back and cleared a path for the officers to enter." *Id.* In finding Carter had consented, the Sixth Circuit observed "[a]ny ordinary caller, under like circumstances, would understand assent to have been given, and the police are not held to a higher standard in this regard than an ordinary person." *Id.* at 588. Moreover, that Carter was in his residence and did not verbally invite the officers in did not render his consent invalid:

> Fundamentally, Carter asks us to hold as a matter of law that consent must be given verbally, perhaps by some "magic words" formula. This we decline to do. Although a man's home is his castle, trumpets need not herald an invitation. The police may be kept out or invited in as informally as any other guest. Carter invited the police in and cannot undo his act in court.

*Id.* at 589. Accordingly, the Sixth Circuit upheld the district court's denial of Carter's suppression

---

to raise it for the first time here. *See Swain v. Comm'r of Soc. Sec.*, 379 F.App'x. 512, 517-18 (6th Cir. 2010) ("A claim raised for the first time in objections to a magistrate judge's report is deemed waived."). The Court, however, will charitably construe Defendant's brief underlying motion and address this question on the merits.

[10] The Magistrate Judge did cite the *Carter* case (*see* Court File No. 20, p. 12), but did not discuss its application to this case.

[11] When they first knocked, the officer claimed to be housekeeping staff.

10

motion.

Under the standards articulated in *Carter*, the Court concludes Defendant consented to entry of his apartment by Officer Jordan. Just as in *Carter*, any ordinary visitor to Defendant's apartment would have understood Defendant's actions to constitute assent to Officer Jordan's entry into Defendant's apartment. Certainly that is the case if Jordan asked Defendant for consent, and Defendant gave it–as Officer Jordan alleges. Moreover, nothing on the record suggests Defendant did not give such consent freely and voluntarily; Defendant is a thirty-one year old high school graduate of average intelligence who has experience with law enforcement and the execution of search warrants. Even if Jordan did not in fact ask Defendant for consent, but instead followed Defendant into the apartment where Defendant held the door open more widely for Jordan would amount to consent under the *Carter* standard. Once inside, moreover, Defendant never once asked for Officer Jordan, or subsequently Deputy Gamble, to leave his apartment. Given his experience with the police, Defendant would have been well aware of his right to require the police to secure a warrant before entering his apartment.

Moreover, throughout the encounter, Defendant made repeatedly clear his interest in cooperating with Officer Jordan, and later with Deputy Gamble. These affirmative expressions of an interest in cooperation, viewed in light of the open door to Defendant's apartment and his failure to object even once to the officers' entry and continued presence in his apartment, demonstrate an implicit invitation to Officer Jordan to enter his apartment, and for both officers to remain inside. Although Defendant now objects to "any finding that he said he wanted to get the stolen property out of his residence because he was on probation as meaning officers could search his home" (Court File No. 24, p.1), Defendant cannot welcome the officers in first, and then cry foul later. "The

police may be kept out or invited in as informally as any other guest," *Carter*, 378 F.3d at 589, and Defendant cannot now undo the informal invitation he extended to Officer Jordan and Deputy Gamble. Accordingly, Defendant consented to entry of his apartment by the officers.

Having concluded Defendant consented to the officers' entry of his apartment, the Court now considers the second aspect of Defendant's first objection: whether Defendant consented to a search of his apartment after the police were inside.[12] Here, the Court places substantial weight on the Magistrate Judge's credibility determinations in considering the testimony of Officer Jordan, Deputy Gamble, and Defendant. The Magistrate Judge found more consistent and credible the officer's account that Defendant consented to a search of his apartment. According to that account, Deputy Gamble asked Defendant for consent to search his apartment for the handgun, and Defendant said he did not have the handgun, but the officers could look for it. Additionally, Officer Jordan had previously sought and received consent to search the apartment for any and all items Defendant had purchased from Poe. In weighing the officer's testimony against the conflicting account given by Defendant, the Magistrate Judge found: 1) "the officers' testimony to be far more consistent and credible than Defendant's self-serving statement that he specifically told the officers he refused to give consent;" 2) "the officers' version of events to be far more credible than Defendant's version"; and 3) "Defendant did not refuse to give consent to a search for the stolen handgun" (Court File No.

---

[12] The Court notes a number of the stolen items Defendant had purchased from Poe were immediately visible through the open door of the apartment to Officer Jordan as he approached. Thus, to the extent Defendant seeks to exclude any of these items as evidence, such an argument is foreclosed because these items fall within the "plain view" exception to the warrant requirement. *See Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971); *Horton v. California,* 496 U.S. 128, 137 (1990); *United States v. McLevain*, 310 F.3d 434, 439 (6th Cir. 2002). Because Defendant's objections appear primarily interested in excluding the revolver, ammunition for the revolver, and the magazine for the handgun and because it is clear from the facts these items were not in plain sight, that exception does not apply to those items.

20, p. 11). Defendant offers no compelling reason to disavow these factual finding, so the Court, deferring to the Magistrate Judge's credibility determinations, *see Moss*, 286 F.3d at 868, will not do so. Accordingly, the Court concludes Defendant consented to a search for the stolen handgun in his apartment by the officers.

Defendant's reliance on *United States v. Worley*, 193 F.3d 380 (6th Cir. 1990) to argue his consent was not given voluntarily is unavailing. In *Worley*, two plain clothes officers approached the defendant in an airport and asked to see the contents of a plastic bag he was carrying. In response, Worley told the two officers "You've got the badge, I guess you can [look inside]." *Id.* at 383. In finding this statement amounted not to consent but "merely a response conveying an expression of futility in resistance or acquiescing in the officers' request," *id.* at 386 (citation omitted), the Sixth Circuit noted, *inter alia*, that Worley "did not assist the officers in their search" and did not "make any additional statements which would indicate free and voluntary consent," *id.* Here, by contrast, Defendant did actively assist the police in rounding up the stolen items he had purchased from Poe. Moreover, he suggested his willingness and readiness to cooperate on a number of occasions. His argument that such cooperation was in fact coerced because "What am I supposed to do? They the police" (Court File No. 22, transcript, p. 67) ignores his extensive past experience dealing with the police. The answer to his (perhaps rhetorical) question is that Defendant should have stayed silent or requested the police to leave, both of which Defendant, who has had his residence searched by the law enforcement in the past, would have known were possible paths to take. Defendant's failure to take them does not render his consent invalid.

Because Defendant's actions, viewed in the totality of circumstances, constituted consent to enter and search his apartment, the Court **DENIES** Defendant's first objection.

### C. Whether Officers Exceeded the Scope of Consent

Having determined Defendant consented to the entry and search of his apartment by Officer Jordan and Deputy Gamble, the Court turns to Defendant's second objection: that the officers exceeded the scope of his consent when they searched for the stolen handgun–and in the process finding a magazine for the handgun and a loaded .22 revolver and thirty rounds of ammunition for that revolver–in Defendant's apartment. Specifically, Defendant claims any consent he gave the officers was at most to "look around" the apartment, and was therefore limited only to a visual inspection (Court File No. 24, p. 6). In response, the government argues consent to search for an item, such as contraband or a gun, extends to any place that item might reasonably be found (Court File No. 25, p. 4). The government has the better of the argument.

As noted above, the question the Court must answer on scope of consent is whether it is reasonable for Officer Jordan and Deputy Gamble to consider Defendant's general consent to search his apartment for the stolen items–and specifically the stolen handgun–to include consent to search inside a bag in his bathroom. In any scope of consent question, the "scope of a search is generally defined by its expressed object." *Jimeno*, 500 U.S. at 251 (citation omitted). In *Jimeno*, a police officer was looking for narcotics, and received the defendant's general consent to search the defendant's automobile.[13] There, it was "objectively reasonable for the police to conclude that the general consent to search [the defendant's] car included consent to search containers within that car which might bear drugs. A reasonable person may be expected to know that narcotics are generally carried in some form of a container." *Id.* Similarly, when Defendant here provided general consent

---

[13] Importantly, the defendant in *Jimeno* "did not place any explicit limitation on the scope of the search." *Jimeno*, 500 U.S. at 251.

for the officers to search his apartment for the stolen items, and specifically for the stolen handgun, he did so without placing any limitations on the areas to be searched. He did not, for example, tell the officers they could search in his bedroom but not in his bathroom. By giving such general consent, Defendant consented to a search in any place where a handgun, or any of the other stolen items, may reasonably be encountered. There is no question it was objectively reasonable for Officer Jordan to look inside a bag in Defendant's bathroom as a possible location for the stolen handgun. Although he did not uncover the stolen handgun, he did find a .22 caliber revolver.

In objecting to the scope of the search in this case, Defendant attempts to distinguish *United States v. Gant*, 112 F.3d, 239 (6th Cir. 1997) and *United States v. Canipe*, 569 F.3d 597 (6th Cir. 2009), two cases the government and the Magistrate Judge discuss, on the basis they involve searches of cars, whereas Defendant's residence is involved in this case. The Sixth Circuit recently made clear, however, in *United States v. Lucas*, 640 F.3d 168, 177-78 (6th Cir. 2011), that the *Jimeno* scope of consent of analysis applies to a residence as well.[14] Thus, to the extent Defendant's objection to the scope of the officers' search relies on a distinction between the automobiles at issue in *Jimeno*, *Gant*, and *Canipe* and Defendant's apartment at issue here, that distinction finds no support in Sixth Circuit case law.

Because Defendant consented to a search of his apartment for the stolen handgun, and the officers did not exceed the scope of that consent when they searched in places where a stolen handgun might reasonably be found, the Court **DENIES** Defendant's second objection. Accordingly, the Court concludes the search of Defendant's apartment was permissible under the

---

[14] Specifically, the *Lucas* court considered the applicability of the automobile scope of consent cases to a consent search of a personal computer located inside a private residence. *Lucas*, 640 F.2d at 177.

Fourth Amendment.

IV. **CONCLUSION**

After reviewing the record, the Court finds the Magistrate Judge properly concluded Defendant consented to a search of his apartment and the officers conducting that search did not exceed the scope of Defendant's consent. Accordingly, the Court will **ACCEPT** and **ADOPT** the R&R (Court File No. 20). Defendant's Motion to Suppress will be **DENIED** (Court File No. 11).

An Order shall enter.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**